1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    BRIAN CARR,                              Case No. 1:21-cv-01021-CDB (SS)

12                    Plaintiff,               ORDER GRANTING PLAINTIFF'S
                                               MOTION FOR SUMMARY JUDGMENT;
13            v.                               DENYING DEFENDANT'S CROSS-
                                               MOTION FOR SUMMARY JUDGMENT
14    KILOLO KIJAKAZI,[1] Acting Commissioner
      of Social Security,                      (Docs. 14, 20)
15
                      Defendant.
16

17

18           Plaintiff Brian Carr ("Plaintiff") seeks judicial review of a final decision of the

19    Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

20    disability insurance benefits under the Social Security Act.  (Doc. 1).  The matter is currently

21    before the Court on the parties' briefs, which were submitted without oral argument.  (Docs. 14,

22    20).[2]  Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds

23    _____

24           [1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  *See*
      Commissioner SSA, https://www.ssa.gov/agency/commissioner/ (last visited November 27, 2024).
25    Accordingly, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this lawsuit.
      *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official
26    capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's
      successor is automatically substituted as a party").
27
             [2] Following the parties' expression of consent to the jurisdiction of a U.S. magistrate judge for all
28    purposes, this action was reassigned to the presiding U.S. magistrate judge pursuant to 28 U.S.C. §
      636(c)(1).  (Doc. 11).

1   and rules as follows.

2   **I.      BACKGROUND**

3      **A. Administrative Proceedings and ALJ's Decision**

4          On December 3, 2018, Plaintiff filed an application for Title II disability insurance

5   benefits, alleging disability beginning February 12, 2018.  (AR 89).  The claim was denied on

6   May 10, 2019.  (AR 88).  It was denied again upon reconsideration on June 12, 2019.  (AR 106).

7          On October 16, 2019, Plaintiff filed a request for hearing.  (AR 129).  The hearing was

8   scheduled for October 9, 2020, at 9:00 a.m.  (AR 147).  On that day, Administrative Law Judge

9   ("ALJ") Kurt Schuman presided over the hearing.  (AR 32-68).  Plaintiff appeared along with his

10  attorney, as did impartial vocational expert Bonnie Martindale.  On November 4, 2020, the ALJ

11  issued his decision, finding Plaintiff not disabled.  (AR 12-31).  On January 4, 2021, Plaintiff

12  filed a request for review with the Appeals Council.  (AR 204-207).  The request was denied on

13  May 7, 2021.  (AR 1-6).

14         After reviewing the evidence, the ALJ considered Plaintiff's claims using the five-step

15  sequential evaluation required by 20 C.F.R § 416.920(a).  At step one, the ALJ found that

16  Plaintiff had not engaged in substantial gainful activity since February 12, 2018, the date of the

17  application.  (AR 17).  At step two, the ALJ found that Plaintiff had the following severe

18  impairments: spine disorders; asthma; left shoulder lesions; trauma and stressor-related disorders;

19  anxiety and obsessive-compulsive disorders; and depressive, bipolar and related disorders.  The

20  ALJ determined Plaintiff had the following non-severe impairments: hypertension,

21  gastroesophageal reflux disease, gastritis without bleeding, and obesity.  *Id.*  The ALJ noted he

22  did consider these non-severe impairments in assessing the claimant's residual functional

23  capacity.  (AR 18).

24         At step three, the ALJ determined that Plaintiff did not have an impairment, or any

25  combination of impairments, that met or medically equaled one of the listed impairments in 20

26  CFR Part 404, Subpart P, Appendix 1.  The ALJ provided a discussion of the reasoning as to why

27  each impairment failed to meet the requirements of the listings.  When evaluating the severity of

28  the Plaintiff's mental impairments, the ALJ reached this determination by considering the four

broad functional areas of mental functioning listed in the "paragraph B" criteria.[3]  (AR 18).

The first functional area is understanding, remembering, or applying information. The ALJ found that Plaintiff had no limitation.  The ALJ supported his finding by noting Plaintiff did not indicate problems with memory, understanding, or following instructions; the ALJ provided a general citation to Exhibit 4E.  The ALJ noted that, during the psychological consultative exam, Plaintiff was fully oriented and could recall three out three words immediately and then after five minutes.  The ALJ found that Plaintiff's short-term, long-term, and working memory appeared intact; the ALJ provided a general citation to Exhibit 6F.  (AR 18).

The second functional area is interacting with others.  The ALJ found that Plaintiff had a moderate limitation.  The ALJ noted that Plaintiff reported that he has problems getting along with others, but that he spends time with others and goes to church; the ALJ provided a general citation to Exhibit 4E.  The ALJ stated Plaintiff testified that he has issues trusting people and that, during the psychological consultative exam, his attitude was positive and he was cooperative.  (AR 18-19).  The ALJ stated Plaintiff maintained appropriate eye contact but exhibited paranoia and reported engaging in hypervigilant behavior such as always watching people; the ALJ provided a general citation to Exhibit 6F.  (AR 19).

The third functional area is concentrating, persisting, or maintaining pace.  The ALJ found that Plaintiff had no limitation.  The ALJ stated that Plaintiff did not indicate problems completing tasks, concentrating, or following instructions; the ALJ cited generally to Exhibit 4E. The ALJ provided that, during the psychological consultative exam, Plaintiff could perform

---

[3] The "paragraph B" criteria evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id.*  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id.*  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.*  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  *Id.*  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  *Id.  See Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1    simple calculations and serial sevens.  The ALJ noted that Plaintiff did not display any difficulties

2    with concentration and noted that he spelled "world" forward and backward with ease; the ALJ

3    cited generally to Exhibit 6F.  (AR 19).

4        The fourth functional area is adapting or managing oneself.  The ALJ found that Plaintiff

5    had no limitation. The ALJ stated that Plaintiff drives a car, goes grocery shopping, and does not

6    need someone to accompany him places; the ALJ cited generally to Exhibit 4E.  The ALJ stated

7    that Plaintiff testified he was working part-time as a co-pastor at his church, that he did not attend

8    counseling for his mental health issues, and that he could dress and bathe himself.  The ALJ

9    provided that, during the psychological consultative exam, Plaintiff was neatly dressed and

10   displayed good grooming and hygiene; the ALJ cited generally to Exhibit 6F.  (AR 19).

11       The ALJ concluded that Plaintiff's mental impairments did not cause at least two

12   "marked" limitations or one "extreme" limitation and, as such, the "paragraph B" criteria were

13   not satisfied.  The ALJ then considered the "paragraph C" criteria,[4] finding that the evidence fails

14   to establish the presence of the "paragraph C" criteria because Plaintiff has more than minimal

15   capacity to adapt to changes in his environment or to demands that are not already part of his

16   daily life.  The ALJ found no evidence in the record establishing that changes or increased

17   demands have led to exacerbation of symptoms and signs and to deterioration in Plaintiff's

18   functioning, concluding that while Plaintiff suffers from depression, anxiety, and PTSD, he had a

19   mostly normal psychological consultative exam (citing generally to Exhibit 6F), and had no

20   mental health treatment or psychiatric hospitalizations during the relevant period.  (AR 19).

21       Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to

22   perform light work, as defined in 20 CFR 404.1567(b).  (AR 19-20).  When considering the

23   Plaintiff's symptoms, the ALJ noted that he must follow the two-step process, as set forth in SSR

24   16-3p.  First, he must determine whether there is an underlying medically determinable physical

25   or mental impairment; namely, an impairment or impairments that can be shown by medically

26       
27       [4] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that
     diminishes the signs and symptoms of [Plaintiff's] mental disorder."  20 C.F.R. § Pt. 404, Subpt. P, App. 1
     § 12.04(C)(1).  "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to
28   changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life."  *Id.*
     at subsection (C)(2).

1    acceptable clinical or laboratory diagnostic techniques that could reasonably be expected to

2    produce the Plaintiff's symptoms.  Second, once an underlying physical or mental impairment(s)

3    that could reasonably be expected to produce Plaintiff's symptoms has been shown, he must

4    evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the

5    extent to which they limit Plaintiff's work-related activities.  For this purpose, whenever

6    statements about the intensity, persistence, or functionally limiting effects of symptoms are not

7    substantiated by objective medical evidence, the ALJ must consider other evidence in the record

8    to determine if Plaintiff's symptoms limit the ability to do work-related activities.  (AR 20).

9        The ALJ found that Plaintiff's medically determinable impairments could reasonably be

10    expected to cause the alleged symptoms, but that his statements concerning the intensity,

11    persistence, and limiting effects of those symptoms were not entirely consistent with the medical

12    evidence and other evidence in the record.  (AR 20-21).

13        The ALJ recounted details of Plaintiff's worker's compensation exams in February and

14    June 2018, related to follow-up for a 2006 work injury to his back.  The ALJ provides extensive

15    pin cites to Exhibit 2F and a general citation to Exhibit 15F, while detailing the medical findings.

16    (AR 21).

17        The ALJ found that, when presenting to his psychological consultative exam, Plaintiff was

18    neatly dressed, displayed good grooming and hygiene, was positive and cooperative, maintained

19    appropriate eye contact, spoke normally, and displayed linear and organized thought processes.

20    The ALJ appeared to quote the exam record in providing that Plaintiff stated his mood was "good

21    most days, [but] depressed some days particularly when [he is] bored"; the ALJ did not provide a

22    pin cite for this quote.  The ALJ found that Plaintiff could recall three out of three words

23    immediately and again after five minutes; that his short-term, long-term, and working memory

24    appeared intact; that he could perform simple calculations and serial sevens; that he did not

25    display any difficulties with concentration; and that he spelled the word "world" forward and

26    backward with ease.  The ALJ notes that the examiner diagnosed Plaintiff with PTSD; he cites

27    generally to Exhibit 6F.  (AR 21).

28        The ALJ then discussed the findings of Plaintiff's April 2019 medical consultative exam.

5

1   The ALJ noted that Plaintiff could easily get up out of his chair, walk, sit comfortably, get on and

2   off the exam table, bend over at the waist, walk easily on heels and toes, and remove his shoes

3   and socks and put them back on.  He was pleasant, cooperative, with a normal gait, did not use an

4   assistive device, and his lungs were clear.  The examiner diagnosed him with mild asthma, neck

5   pain, left shoulder pain, and low back pain, finding he had a good range of motion in his neck

6   following a surgery earlier in his life, and well-maintained range of motion in his left shoulder.

7   The ALJ cited to pages 1 to 3 and 9 to 12 of Exhibit 7F.  (AR 22).

8   　　　The ALJ then considered an August 2019 visit by Plaintiff to his primary care provider for

9   his asthma, "mild-to-moderate anxiety," left shoulder tendinitis, and lumbar disc disease.  The

10  provider noted that his asthma was stable, and that his "anxiety nervousness agitation" was

11  episodic.  He was found to have tenderness and reproducible pain in his shoulder but no

12  weakness.  The provider recommended icing, a splint, anti-inflammatory medicine, and possibly

13  an injection.  He had point tenderness at the lumbar area with diffuse paraspinal muscle spasm

14  and strain.  The provider recommended a back brace, icing, and anti-inflammatory and muscle

15  relaxant medicine.  In March 2020, Plaintiff received trigger point injections in his lumbar spine.

16  The ALJ cites to pages 36, 37, and 41 of Exhibit 16F.  (AR 22).

17  　　　The ALJ found that the Plaintiff's statements concerning the intensity, persistence, and

18  limiting effects of his symptoms were inconsistent.  In support, the ALJ noted that Plaintiff drives

19  a car, goes grocery shopping, spends time with others, goes to church, and does not need to be

20  accompanied to places.  He did not indicate problems with memory, completing tasks,

21  concentrating, understanding, or following instructions.  He can lift 50 to 75 pounds; the ALJ

22  cites generally to Exhibit 4E.  He does not attend counseling for his mental health issues, works

23  part-time as a co-pastor at his church, and can dress and bathe himself. He had a mostly normal

24  psychological consultative exam; the ALJ cites generally to Exhibit 6F.  He had no mental health

25  treatments or psychiatric hospitalizations during the relevant period.  (AR 22).

26  　　　The ALJ continues by noting that, during an exam in June 2018, Plaintiff had normal

27  cervical and lumbar lordosis.  He had no neck or back spasms and had normal cervical and

28  lumbar range of motion, with a normal gait, and with normal muscle strength throughout; the ALJ

6

1    cites to pages 26 to 27 of Exhibit 2F, and generally to Exhibit 15F.  The ALJ then recounts some
2    of his earlier findings, stating that, during the April 2019 medical consultative exam, Plaintiff
3    could easily get up out of the chair and walk to the exam room without assistance.  He sat
4    comfortably and could easily get on and off the exam table.  He could easily bend over at the
5    waist, take his shoes and socks off, and put them back on.  He could easily walk on toes and
6    heels.  He had a normal gait. His straight leg raise was negative bilaterally and his strength was
7    5/5 throughout including grip.  The ALJ states that the examiner noted Plaintiff's asthma was
8    mild and well controlled.  He had not required an inhaler in a year.  He had good range of motion
9    of his neck following his surgery.  He had well-maintained left shoulder range of motion; the ALJ
10   cited to pages 9 to 12 of Exhibit 7F.  His lumbar spine x-rays showed only mild disc space loss at
11   L5-S1 and his left shoulder x-rays showed only mild narrowing of the subacromial space; the ALJ
12   cites to pages 1 and 2 of Exhibit 7F.  Plaintiff's primary care provider noted that his asthma was
13   stable and recommended only conservative treatment for his shoulder and back; the ALJ cites to
14   page 37 of Exhibit 16F.  (AR 22).

15        The ALJ considered the opinions of the state agency medical consultants concluding that
16   Plaintiff can perform medium work, finding them unpersuasive due to lack of any supporting
17   summaries and consistency with the record as whole.  The ALJ states that Plaintiff underwent a
18   discectomy and fusion, with a later lumbar spine MRI showing impingement of nerve roots, as
19   well as a disc protrusion, annular tear, and straightening of the lumbar lordosis.  During exams,
20   Plaintiff had pain to palpation of his lumbar and cervical spine.  The ALJ cites to generally to
21   Exhibits 1A, 3A, 15F, and 16F, as well as to page 41 of Exhibit 2F and page 6 of Exhibit 9F.
22   (AR 23).

23        The ALJ also considered the state agency psychological consultant's opinions, finding
24   them partially persuasive due to being supported by a partially persuasive summary of the record
25   and partially consistent with the record as a whole (demonstrating only moderate social
26   limitations).  The ALJ provides that Plaintiff can complete simple and detailed instructions;
27   follow directions without additional assistance; maintain adequate attention, concentration,
28   persistence, and pace as needed to complete a full workday/workweek; maintain appropriate

1    behavior in a context of limited social demands; accept instructions and respond appropriately to

2    feedback from supervisors; be aware of ordinary hazards, make decisions, utilize transportation,

3    and cope with the demands of a routine, work-like environment.  The ALJ cited generally to

4    Exhibits 1A and 3A.  The ALJ notes that, in a function report (citing generally to Exhibit 4E),

5    Plaintiff reported that he has problems getting along with others, but that he drives a car, goes

6    grocery shopping, spends time with others, goes to church, and does not need someone to

7    accompany him places. He did not indicate problems with memory, completing tasks,

8    concentrating, understanding, or following instructions.  (AR 23).

9        The ALJ repeats some of the prior findings in his opinion, namely that, during the

10   psychological consultative exam, Plaintiff was neatly dressed.  He displayed good grooming and

11   hygiene. His attitude was positive and he was cooperative.  He maintained appropriate eye

12   contact. He could recall three out of three words immediately and after five minutes.  His short-

13   term, long-term, and working memory appeared intact.  He could perform simple calculations and

14   serial sevens. He did not display any difficulties with concentration.  He spelled the word "world"

15   forward and backward with ease.  The ALJ cites generally to Exhibit 6F.

16       The ALJ similarly considered the opinions of the psychological consultative examiner,

17   finding them partially persuasive due to being partially supported by the exam and partially

18   consistent with the record as a whole.  The ALJ repeated that Plaintiff has no impairment in his

19   ability to perform simple, repetitive, detailed, or complex tasks.  He has no impairment in his

20   ability to understand and accept instructions from supervisors.  He has moderate impairment in

21   his ability to interact with coworkers and the public.  He has no impairment in his ability to

22   perform work activities on a consistent basis without special or additional instructions.  He has

23   moderate impairment in his ability to maintain regular attendance and complete a normal

24   workday or workweek without interruptions.  He has moderate impairment in his ability to deal

25   with the usual stressors encountered in the workplace.  The ALJ cites generally again to Exhibit

26   6F.  (AR 23).

27       The ALJ also notes that Plaintiff reported that he has problems getting along with others,

28   but that he drives a car, goes grocery shopping, and does not need someone to accompany him

1 places.  He did not indicate problems with memory, completing tasks, concentrating,

2 understanding, or following instructions.  The ALJ cites generally to Exhibit 4E.  (AR 24).

3     The ALJ found that the opinion of the medical consultative examiner, namely that

4 Plaintiff can perform medium work, was partially persuasive.  The ALJ noted that, while

5 supported by the exam, the opinion is inconsistent with the record as a whole, which supports a

6 limitation to light work.  In support, the ALJ repeated the findings of the April 2019 medical

7 consultative exam, citing to Exhibits 2F, 7F (pages 1, 2, and 9 to 12), 15F, and 16F.  (AR 24).

8     The ALJ found it unnecessary to evaluate the persuasiveness of the workers'

9 compensation doctors, who indicated in their records that Plaintiff should remain off work, as

10 they did "not provide functional limitations."  The ALJ cites to page 2 of Exhibit 11F, page 2 of

11 Exhibit 12F, page 2 of Exhibit 13F, and page 2 of Exhibit 14, as well as to Exhibit 2F generally.

12 (AR 24).

13     Finally, the ALJ considered the opinions of the workers' compensation provider,

14 physician Virginia Alvidrez, finding her conclusions partially persuasive as they were partially

15 supported by the provider's exam and partially consistent with the record as a whole, namely in

16 that it shows environmental limitations and an inability to return to past work.  In June 2018,

17 Alvidrez concluded that Plaintiff could return to modified work, defined as not driving a patrol

18 car, no work in dusty environments, no work in stressful situations, and no work as a deputy

19 sheriff.  The ALJ cited to page 2 of Exhibit 15F.  The ALJ reasoned that Alvidrez, however, is not

20 a mental health provider and is therefore not qualified to give opinions as to the Plaintiff's stress

21 tolerance.  The ALJ compared the results of Alvidrez's exam to other exams in the record,

22 regarding Plaintiff's impairments and symptoms, and found it partially persuasive.  (AR 24).

23     At step four, the ALJ found that Plaintiff was unable to perform any past relevant work,

24 noting that the vocational expert testified as such when asked whether an individual with

25 Plaintiff's RFC could perform it.  (AR 25).  At step five, based on the testimony of the vocational

26 expert, the ALJ concluded that Plaintiff could perform jobs that exist in the national economy,

27 such as router clerk, marker, and package sorter.  The ALJ found the Plaintiff to have not been

28 under a disability from February 12, 2018 through the date of the decision.  (AR 26).

1    After the Appeals Council denied review, Plaintiff initiated this action, filing his motion

2    for summary judgment on May 3, 2022.  (Doc. 14).  Defendant filed an opposition and cross-

3    motion for summary judgment on July 19, 2022.  (Doc. 20).

4    **B.  Medical Record and Hearing Testimony**

5    The relevant hearing testimony and medical record were reviewed by the Court and will

6    be referenced below as necessary to this Court's decision.

7    **II.      STANDARD OF REVIEW**

8    A district court's review of a final decision of the Commissioner of Social Security is

9    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

10   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

11   is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

12   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

13   conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

14   equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

15   citation omitted).  "It is such relevant evidence as a reasonable mind might accept as adequate to

16   support a conclusion."  *Healy v. Astrue*, 379 F. App'x 643, 645 (9th Cir. 2010).  In determining

17   whether the standard has been satisfied, a reviewing court must consider the entire record as a

18   whole rather than searching for supporting evidence in isolation.  *Id.*

19   In reviewing a denial of benefits, a district court may not substitute its judgment for that of

20   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

21   to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

22   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

23   harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

24   nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

25   decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

26   U.S. 396, 409-10 (2009).

27   **A.  Applicable Legal Standards**

28   A claimant must satisfy two conditions to be considered "disabled" within the meaning of

10

the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her

1    limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the

2    analysis.

3        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

4    claimant is capable of performing work that he or she has performed in the past (past relevant

5    work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant

6    work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If

7    the claimant is incapable of performing such work, the analysis proceeds to step five.

8        At step five, the Commissioner considers whether, in view of the claimant's RFC, the

9    claimant is capable of performing other work in the national economy. 20 C.F.R. §

10   416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational

11   factors such as the claimant's age, education, and past work experience. *Id*. If the claimant is

12   capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.

13   20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis

14   concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

15       The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

16   180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

17   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

18   work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*

19   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

20   **III.    ISSUES AND ANALYSIS**

21       Plaintiff seeks judicial review of the Commissioner's final decision denying his

22   application. (Doc. 1). Plaintiff raises the following issues:

23      1. The ALJ failed to discuss additional limitations imposed by Plaintiff's irritable bowel

24        syndrome ("IBS") and gastroesophageal reflux disease ("GERD") (Doc. 14 at 4) and

25        failed to analyze the need for additional unscheduled work breaks (*id.* at 6); and

26      2. The ALJ provided no basis for rejecting treating and evaluating sources from the

27        workers' compensation claim (*id.* at 5).

28   *//*

1    **A. Whether the ALJ Failed to Provide a Proper Basis for the RFC and Failed to**

2    **Consider Limitations from Plaintiff's IBS and GERD**

3    Plaintiff asserts that the ALJ erred in finding an RFC limiting Plaintiff to light work, and

4    in particular failed to consider limitations related to Plaintiff's IBS and GERD conditions.  *Id.* at

5    4.  Regarding the ALJ's limitation of two hours of concentration with normal breaks, Plaintiff

6    argues that he cannot "plan out his 2 hour periods of concentration sufficiently to fit within such

7    narrow constraints" and claims this supports the need for additional unscheduled breaks, which

8    was not adequately analyzed.  *Id.* at 6.

9    Defendant asserts that substantial evidence supports the ALJ's finding and Plaintiff's

10   argument that the ALJ should have included additional limitations to account for gastrointestinal

11   issues is not supported by the overall record.  Defendant states that Plaintiff has not met his

12   burden to establish such limitations (Doc. 20 at 10) nor to establish a greater degree of limitations

13   as to unscheduled breaks (*id.* at 13).

14   Here, although Plaintiff's arguments are extremely brief (amounting to a few sentences of

15   written argument, in total), the Court construes his principal argument to be an attack on the

16   ALJ's formulation of the RFC.  This argument squarely calls on the Court to resolve whether

17   whether the ALJ properly rejected Plaintiff's subjective symptom testimony.  The Court cannot

18   assess whether the ALJ appropriately accounted for Plaintiff's IBS and GERD limitations without

19   first assessing whether Plaintiff's subjective symptom testimony was properly considered.  *See*

20   *Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012).  An ALJ's failure to properly consider

21   Plaintiff's subjective symptom testimony may independently be reversible error.  *See Brown-*

22   *Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (finding that an ALJ's failure to identify and

23   explain why a claimant's subjective testimony is not credible constitutes reversible error because

24   the reviewing court cannot determine if the ALJ's decision was supported by substantial

25   evidence).

26   Before discrediting a claimant's subjective symptom testimony, an ALJ must first

27   determine if objective medical evidence of an underlying impairment "could reasonably be

28   expected to produce the pain or other symptoms alleged."  *Trevizo v. Berryhill*, 871 F.3d 664, 678

13

(9th Cir. 2017). The ALJ found this was the case here. (AR 20). The second step is for the ALJ to describe specific, clear, and convincing reasons to reject the claimant's testimony on the severity of his symptoms. *Trevizo*, 871 F.3d at 678. The Court finds that the ALJ failed to satisfy the second step.

This is not a scenario where Plaintiff appears to have invented brand-new ailments out of whole cloth. Accounts of Plaintiff's gastrointestinal issues exist throughout the record. (AR 345-346, 348, 393-394, 400, 402-403, 451, 538-542, 554, 612, 622, 626, 667, 670, 687, 693, 701, 706, 708, 719-24). That, along with his testimony during the hearing regarding his symptoms (AR 45-46, 51), establishes for the ALJ a duty to discuss Plaintiff's impairments and resulting subjective symptom testimony and, if the ALJ finds such testimony should be rejected, the ALJ must describe his reasons with specificity under the relevant clear and convincing standard. It follows that Defendant's argument that Plaintiff failed to meet his burden of establishing such limitations is unpersuasive. *See, e.g., Jonathan A. Z. v. Kijakazi*, No. 20-CV-07381-RMI, 2022 WL 799082, at *5 (N.D. Cal. Mar. 16, 2022) ("Here, Plaintiff not only put forth medical documentation substantiating his IBS, his GERD . . . but he also testified (albeit briefly) about how those conditions affect his ability to function and how they exacerbate his other impairments. The court finds that those medical records, in conjunction with that testimony, triggered the ALJ's duty to further develop the record regarding the nature and extent of the limitations caused by the combination of these gastrointestinal impairments.").

While the Court may be able to draw inferences about what testimony may be inconsistent, the ALJ must identify those inconsistencies with specificity. *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (citing *Brown-Hunter*, 806 F.3d at 494) ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and the reviewing court is "constrained to review the reasons the ALJ asserts.").

In his decision, the ALJ cites only two pages of the record when discussing Plaintiff's gastrointestinal issues (namely, AR 451 and 538). Indeed, the entirety of the ALJ's discussion can be quoted here: "His medical records evidence gastroesophageal reflux disease (GERD) and

1  gastritis without bleeding, which was described as stable.  He testified that he only takes Alka-

2  Seltzer in the evenings and does not take any prescription medication for his acid reflux." (AR

3  17) (internal citation omitted).  Later in the ALJ's decision, when discussing the Plaintiff's

4  allegations regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ did

5  not mention Plaintiff's gastrointestinal issues.  (AR 20).  He discusses them no further in his

6  decision beyond the quote supplied above.  Plaintiff's testimony during the hearing (AR 45-46,

7  51), beyond the ALJ's reference to Plaintiff taking Alka-Seltzer, is never referred to or cited.

8       During the hearing, Plaintiff mentioned he did not eat breakfast regularly and, if he did

9  and left home, he would need have regular access to a bathroom.  He states he will use the

10  bathroom "five or six times," due to GERD and IBS.  He testifies that if he "eats anything," he

11  will have to use the bathroom.   He remarks that he attempts to eat soups and sandwiches to

12  minimize this.  (AR 45-46).  He later mentions, when questioned by the ALJ about medications

13  he uses for his stomach issues, that he was prescribed "a lot of different types of pills."  He states

14  he only uses Alka-Seltzer before bed, providing that though he had taken many medications in the

15  past none seemed to work.  (AR 51).

16       The ALJ did not question Plaintiff any further during the hearing regarding his

17  gastrointestinal issues and did not provide any specific discussion with clear and convincing

18  rationale sufficient to reject this symptom testimony and exclude it from factoring into his

19  decision.

20       Insofar as the ALJ intended his discussion of Plaintiff's reported activities (AR 22) to act

21  as an explanation regarding the inconsistency of Plaintiff's IBS and GERD symptom testimony or

22  its lack of credibility otherwise, that discussion is insufficient.  The ALJ does not mention IBS,

23  GERD, Plaintiff's symptom testimony, or provide any reasoning regarding it.  An ALJ is not

24  "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See*

25  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).  However, to discredit a claimant's testimony

26  when the claimant produces medical evidence of an underlying impairment (as Plaintiff did here),

27  the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Morgan v. Comm'r*, 169 F.3d

28  595, 599 (9th Cir. 1999) (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)), *superseded*

1    *on other grounds by* 20 C.F.R. Parts 404 & 416.  The ALJ must "cit[e] the reasons why the

2    [claimant's] testimony is unpersuasive."  Where, as here, the ALJ did not find "affirmative

3    evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's

4    testimony must be clear and convincing."  *Id.*

5         The ALJ failed to reject Plaintiff's symptom testimony as it relates to his gastrointestinal

6    issues with specific reasons that meet the relevant clear and convincing evidentiary standard.

7         Regarding the ALJ's RFC limitations, Plaintiff argues that the two-hour concentration

8    limitation within normal breaks provided by the ALJ is "fiction not supported by the record."

9    Plaintiff's arguments in support of this are somewhat difficult to parse, but he appears to claim

10   that this is due to his mental health impairments, asthma, hypertension, and GERD.  (Doc. 14 at

11   5-6).  He also appears to argue that the ALJ misunderstood or misconstrued Plaintiff's "8-10

12   hours" a week volunteering as a co-pastor at his church as him "working part-time."  (AR 22).

13        Plaintiff claims these impairments were not "adequately analyzed."  *Id.*  However, as

14   noted in Section I above, the ALJ did consider Plaintiff's mental health impairments, asthma, and

15   hypertension in his decision.  Regarding mental health, the ALJ engaged in an analysis utilizing

16   the "paragraph B" and "paragraph C" criteria and discussed mental health impairments when

17   analyzing Plaintiff's symptom testimony.  (AR 18-19, 22).  As to asthma, the ALJ notes the

18   evidence fails to establish it as a listed impairment.  (AR 18).  The ALJ noted his asthma was

19   found to be "stable" and "mild and well controlled."  (AR 22).  The ALJ included as a limitation

20   that Plaintiff "is further limited in that he must avoid frequent exposure to irritants such as fumes,

21   odors, dust, and gases, as well as poorly ventilated areas" (AR 20) which appears consistent with

22   Plaintiff's testimony regarding his asthma (AR 58-59).  The ALJ discusses Plaintiff's

23   hypertension as a non-severe impairment, stating providers described it as "stable and

24   recommended conservative treatment" (AR 17).  Plaintiff did not provide any notable symptom

25   testimony regarding hypertension, noting he was on Zestril for it (AR 50) and providing only that,

26   otherwise, his heart had healed (AR 50-51).

27        Though the ALJ did describe Plaintiff's volunteering with his church as "part-time work"

28   (AR 25), despite Plaintiff's testimony that he simply volunteered eight to ten hours a week (AR

42-43) and Plaintiff's counsel's objection to the position being included as past relevant work (AR 61-62), this appears to be a harmless error.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have, for example, deemed errors harmless where the ALJ misstated the facts about the claimant, but we were able to conclude from the record that the ALJ would have reached the same result absent the error.").  Plaintiff was not found to be able to perform his past relevant work, regardless of whether the ALJ or vocational expert credited his volunteering as co-pastor as previous part-time work.  (AR 25, 63-64).

However, the ALJ's failure to address Plaintiff's symptom testimony as to his IBS and GERD is not harmless error because, if considered, it may implicate the frequency of work breaks required by the Plaintiff.  As noted by the vocational expert in response to a hypothetical posed by the ALJ during the hearing, if Plaintiff were to require additional breaks of duration between 10 and 15 minutes each day, in addition to regularly scheduled breaks, and with more than two unscheduled absences per month, there would be no occupations that Plaintiff could perform.  (AR 65).

As the ALJ did not properly evaluate the Plaintiff's symptom testimony as to his IBS and GERD limitations, and did not pose a properly crafted hypothetical including any such breaks that might be needed as a consequence of Plaintiff's IBS and GERD symptoms, it is unclear whether Plaintiff would then be considered disabled.

### B.  Whether the ALJ Failed to Provide a Basis for Rejecting Treating and Evaluating Sources from the Workers' Compensation Claims

Plaintiff argues that the ALJ provided no basis for rejecting treating and evaluating sources from the state workers' compensation claim.  (Doc. 14 at 5).

Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they]

1 | considered the medical opinions" and "how persuasive [they] find all of the medical opinions."

2 | 20 C.F.R. § 404.1520c(a)–(b). Accordingly, under the new regulations, "the decision to discredit

3 | any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32

4 | F.4th 785, 787 (9th Cir. 2022).

5 | In conjunction with this requirement, "[t]he agency must 'articulate ... how persuasive' it

6 | finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it]

7 | considered the supportability and consistency factors' in reaching these findings." *Id.* at 792

8 | (citing 20 C.F.R. § 404.1520c(b)). *See* 20 C.F.R. § 416.920c(b). "Supportability means the

9 | extent to which a medical source supports the medical opinion by explaining the 'relevant ...

10 | objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).

11 | *See* 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is

12 | 'consistent ... with the evidence from other medical sources and nonmedical sources in the

13 | claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id.* § 416.920c(c)( 2).

14 | An ALJ may properly reject the "ultimate conclusions" of disability made in the context

15 | of another type of proceeding such as a workers' compensation case. 20 C.F.R. § 404.1504 ("A

16 | decision by any nongovernmental agency or any other governmental agency about whether you

17 | are disabled or blind is based on its rules and is not our decision about whether you are

18 | disabled..."); 20 C.F.R. § 416.920(c) (providing that an ALJ must consider medical opinions or

19 | prior administrative medical findings using multiple factors, the most important of which are

20 | supportability and consistency). *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)

21 | ("Conclusory opinions by medical experts regarding the ultimate question of disability are not

22 | binding on the ALJ").

23 | However, an ALJ "may not disregard a ... medical opinion simply because it was initially

24 | elicited in a state workers' compensation proceeding ..." *Booth v. Barnhart*, 181 F. Supp. 2d

25 | 1099, 1105 (C.D. Cal. 2002). Instead, an ALJ must evaluate the medical records prepared in the

26 | context of workers' compensation in the same way he or she would evaluate records obtained

27 | otherwise. *Id.* (citing *Coria v. Heckler*, 750 F.2d 245, 248 (3d Cir. 1984)) ("[T]he ALJ should

28 | evaluate the objective medical findings set forth in the medical reports for submission with the

1   workers' compensation claim by the same standards that s/he uses to evaluate medical findings in

2   reports made in the first instance for the Social Security claim"); *cf. Lester*, 81 F.3d at 832

3   (holding that the ALJ erred in rejecting a physician's reports because they "were clearly obtained

4   by the claimant's attorney for the purpose of litigation," and stating that "[t]he purpose for which

5   medical reports are obtained does not provide a legitimate basis for rejecting them").

6           In analyzing medical opinions using state workers' compensation terminology, the ALJ

7   "is entitled to draw inferences logically flowing from the evidence." *Macri v. Chater*, 93 F.3d

8   540, 544 (9th Cir. 1996) (quotations omitted) (holding that the ALJ reasonably inferred that a

9   worker who had "lost approximately half of his pre-injury capacity for lifting, bending and

10  stooping" under the California workers' compensation guidelines, and whose prior job required

11  lifting forty pounds occasionally, twenty-five pounds frequently, and constant bending, could

12  perform light work under the Commissioner's regulations); *Carpenter v. Apfel*, No. C 98-4891

13  SC 2000 WL 973681 at *3-4 (N.D. Cal. July 5, 2000) (holding that the opinion of an examining

14  physician that the claimant had "lost some capacity for lifting and bending, and was precluded

15  from any heavy lifting" under the California workers' compensation guidelines supported the

16  ALJ's finding that the claimant could perform light work).

17          Defendant argues that the ALJ's refusal to examine the persuasiveness of the state

18  workers' compensation medical records was correct.  Defendant states that these statements do

19  not "constitute 'opinions' as defined in the revised regulations because … a medical opinion is a

20  statement about what an individual can still do despite his or her impairments, and includes

21  limitations or restrictions …"  (Doc. 20 at 11-12).  Defendant argues that the blanket statement

22  "remain off-work" does not fall within this definition and is not "valuable nor persuasive." *Id.* at

23  12.  Defendant also contends that several of the records were made prior to the date Plaintiff

24  alleged he became disabled and were thus outside the period the ALJ was required to consider.

25  *Id.*

26          There is, however, an important distinction between rejecting a conclusion, such as

27  "remain off-work," and rejecting medical opinions and work-related limitations.  *See Neves v.*

28  *Comm'r of Soc. Sec.*, No. 1:15-CV-01194-EPG, 2017 WL 1079754, at *6 (E.D. Cal. Mar. 21,

2017) ("*To be very clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated.") (emphasis in original); *De Magana v. Comm'r of Soc. Sec.*, No. 1:21-CV-01288-CDB, 2024 WL 870821, at *9 (E.D. Cal. Feb. 29, 2024) ("The ALJ was entitled to reject the conclusion of Dr. Vanderhyde that Defendant 'Remain off-work.'  However, an ALJ may not reject work-related limitations simply on the grounds that a source also addressed the ultimate issue … Here, the ALJ did not address the functional limitations identified by Dr. Vanderhyde on July 31, 2018.  Thus, the ALJ erred by failing to address the functional limitations proposed by Dr. Vanderhyde and did not identify germane reasons for rejecting said limitations.") (citing *Neves*).

The ALJ states that, when referring to workers' compensation doctors' records, he "finds it unnecessary to evaluate the persuasiveness of these work status forms, as they do not provide functional limitations."  He cites specifically to Exhibits 1F, 2F, 11F, 12F, 13F, and 14F.  (AR 24).  However, the ALJ extensively cites to Exhibit 2F across his decision, including in the preceding and subsequent paragraphs.  *See* (AR 17, 21-24).  It is unclear why the ALJ cites Exhibit 2F among the exhibits whose persuasiveness he need not consider, despite the fact the ALJ continually cites to it.  Indeed, it seems, as the ALJ is citing Exhibit 2F's findings, he should then consider its persuasiveness under the factors of supportability and consistency.  *See De Magana*, 2024 WL 870821, at *10 ("The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors [of supportability and consistency].") (citations omitted).

Defendant is correct as to the date of Exhibit 11F falling prior to the date Plaintiff alleges as the onset of his disability (February 12, 2018).  (AR 682).  It appears, however, that Exhibits 12F, 13F, and 14F are dated after February 12, 2018.  Defendant is correct that the ALJ need not consider the "remain off-work" conclusion but it appears that at least two of these exhibits evidence potential limitations (AR 691, 703), and all evidence symptom testimony and/or medical findings.  (AR 689-690, 695-696, 702-703).

An ALJ properly may refuse to consider the workers' compensation record's conclusions

1    as to disability status.  But the ALJ may not simply refuse to evaluate the persuasiveness of the

2    accompanying medical and symptom testimony, particularly in regard to limitations, within these

3    records under the supportability and consistency factors merely because they are workers'

4    compensation documents that provide a conclusory finding of "remain off-work."  *See Booth v.*

5    *Barnhart*, 181 F. Supp. 2d 1099, 1109 (C.D. Cal. 2002) (finding that, because the ALJ did not

6    adequately "translate" physician's opinion into Social Security terms, and because he did not

7    analyze her opinion in light of the relevant factors, the ALJ committed legal error).

8                                    *          *          *          *          *

9         In sum, the ALJ failed to consider or properly reject Plaintiff's symptom testimony

10   regarding his IBS and GERD under the applicable standard and failed to evaluate state workers'

11   compensation medical records under the relevant factors.

12        The decision whether to remand for further proceedings or simply to award benefits is

13   within the discretion of the Court.  *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).

14   Remand for further proceedings is warranted where additional administrative proceedings could

15   remedy defects in the decision.  *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).

16   Remand for the payment of benefits is appropriate where no useful purpose would be served by

17   further administrative proceedings (*Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980)); where

18   the record has been fully developed (*Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986));

19   or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff

20   is entitled (*Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)).

21        The Court concludes that remand for further proceedings is warranted because additional

22   administrative proceedings may remedy the defects in the ALJ's decision noted above.

23

24                         *Remainder of This Page Intentionally Left Blank*

25

26

27

28

21

1

**IV.    CONCLUSION**

2

For the reasons set for above, the Court finds the ALJ erred in evaluating opinions in the

3

record and failed to apply the proper legal standards.  Accordingly, IT IS HEREBY ORDERED

4

that:

5

1.  Plaintiff's motion for summary judgment (Doc. 14) is **GRANTED**.

6

2.  Defendant's cross-motion for summary judgment (Doc. 20) is **DENIED.**

7

3.  This matter is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for further

8

proceedings consistent with this decision; and

9

4.  The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Brian Carr

10

and against Defendant Commissioner of Social Security.

11

IT IS SO ORDERED.

12

Dated:    **January 16, 2025**

13

UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28